UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEVIN BENNER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| DOUGLAS H. DEMOURA, et al., | * | Civil Action No. 20-cv-12269-ADB |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Kevin Benner ("Benner") brings this *pro se* action against prison superintendent Douglas DeMoura and five correctional medical providers, Dr. Aysha Hameed, Herbert Ddungo, Jenny Viera, Joanne Stachowicz, and Mary Ellen Dolan (collectively, the "Medical Defendants"), alleging that his rights were violated while he was incarcerated at MCI-Cedar Junction. Now before the Court are Defendants' motions to dismiss, [ECF No. 30 (Medical Defendants); ECF No. 39 (DeMoura)], and Benner's motion to amend the complaint, [ECF No. 37]. For the reasons set forth below, Benner's motion to amend is <u>DENIED</u> without prejudice, DeMoura's motion to dismiss is <u>GRANTED</u>, and the Medical Defendants' motion to dismiss is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I.    RELEVANT PROCEDURAL HISTORY

Benner initiated this *pro se* action on December 18, 2020, while in custody at MCI-Cedar Junction in Walpole, Massachusetts. [ECF No. 1]. With his complaint, Benner filed a letter

indicating, among other things, that he wished to pay the filing fee and that he planned to file an amended complaint once he identified the names of certain nurses and doctors.  [ECF No. 2].

On January 21, 2021, Benner filed an amended complaint, [ECF No. 5], accompanied by a letter seeking an extension of time to pay the filing fee, [ECF No. 6].

By Memorandum and Order dated January 27, 2021, Benner was advised that his complaint and amended complaint were subject to dismissal pursuant to 28 U.S.C. § 1915A because they failed to comply with the basic pleading requirements of the Federal Rules of Civil Procedure.  [ECF No. 11].  Benner was granted additional time to pay the filing fee and to file a second amended complaint.  [Id.].

On February 9, 2021, Benner filed his second amended complaint ("SAC").  The SAC brings claims pursuant to 42 U.S.C. § 1983 against the Medical Defendants and DeMoura in their individual and official capacities, as well as state law claims against the Medical Defendants.  [ECF No. 9-1 ¶¶ I(B), II(B)]; see generally [ECF No. 9].  For relief, Benner seeks monetary damages and "possible administrative remedies."  [ECF No. 9 at 11; ECF No. 9-1 ¶ VI].

On August 13, 2021, the Medical Defendants filed a motion to dismiss the SAC and a supporting memorandum.  [ECF Nos. 30, 31].  On August 25, 2021, DeMoura filed an Answer.  [ECF No. 32].  After being granted an extension of time, Benner filed his opposition to the Medical Defendants' motion to dismiss on September 10, 2021, which attached 122 pages of exhibits, primarily consisting of copies of medical records, medical test results, sick call requests, and grievance forms.  [ECF Nos. 36, 36-1].

On November 15, 2021, Benner filed a motion to amend to add Wellpath, a private healthcare company that employs the Medical Defendants, [ECF No. 31 at 1], and the

Department of Correction as defendants, [ECF No. 37], which the Medical Defendants opposed, [ECF No. 38].  On January 12, 2022, DeMoura filed a motion to dismiss the SAC and opposition to Benner's motion to amend with a supporting memorandum.  [ECF Nos. 39, 40].  On February 24, 2022, Benner filed a letter stating, among other things, that he may be willing to withdraw his motion to amend because he filed an entirely new action which includes as defendants Wellpath and the Department of Correction.[1]  [ECF No. 41].  Benner is currently in custody at MCI-Norfolk.  [Id.].

## II.     FACTUAL ALLEGATIONS

The following facts are taken from the SAC, [ECF Nos. 9, 9-1], the factual allegations of which are assumed to be true when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  Benner, who was incarcerated at MCI-Cedar Junction at the time of the events described in the SAC, alleges that the events giving rise to his claims began on "September 24, 2020" and are "ongoing."  [ECF No. 9-1 ¶¶ IV(B), (C)].  During his time in MCI-Cedar Junction, he has required medical treatment for "conjunctivitis (eyes)[,] blood in stool, knee & back bone pain, chest pain, heart condition, Covid 19, food poisoning, worm (parasites)[,] rashes, prolapses, faciitas [sic], arthritis."  [Id. ¶ V].  Benner claims that "staff only took [his] temp & blood pressure [and] never did other tests that were ordered and should have been ordered."  [Id.].

Benner filed grievances that complained of "non-referrals, blocking [Benner] from triage/providers. . . Hippa violations, CMR violations, lack of testing, neglect, deliberate punishment, civil rights violation."  [ECF No. 9-1 ¶ VII(E)(2)].  He alleges that his grievances were denied and that he filed appeals with Wellpath and DeMoura.  [Id. ¶ VII(E)(4)].

---

[1] Benner v. Alves, et al., No. 21-cv-12080-WGY (filed Dec. 28, 2021).

With respect to Defendant DeMoura, the SAC alleges that he "deliberately denied and blocked [Benner] from receiving medical care and medical moves causing [Benner] to suffer more and for a greater period of time aggravating [Benner's] current medical issues, making them worse for the future." [ECF No. 9 at 2]. Benner contends that DeMoura "failed to direct medical and other staff to follow the state CMR's and the State and U.S. Constitution and allowed them to violate [Benner's] civil rights." [Id.].

As to Defendant Viera, the SAC alleges that she failed to inform Benner of the "results of blood in [Benner's] stool samples, blocked [Benner] from receiving more test[s] and purposely had [Benner] removed from triage and provider lists." [ECF No. 9 at 3]. According to Benner, Viera told "non medical staff that all [of Benner's] labs were within normal limits" and "purposely yelled at [Benner] to make it look as though [Benner] was raising [his] voice to her." [Id.]. Benner also avers that Viera refused his request for further testing including "a feces test for parasites and a bacterial infection test." [Id. at 4]. He claims that she stated that "all [of Benner's] stool samples were negative for occult blood, however, [Benner] learned from another nurse that 2 out of 3 tests were positive." [Id.]. Benner complained to Viera of conjunctivitis and "asked for a medicine [he] had already been prescribed (eye antibiotic)" and that Viera "refused any further testing." [Id.]. In response to repeated complaints of "severe pain for prolapsed hemorrhoids which need surgery and a visit to a proctologist," Viera told Benner "and staff that [Benner's] issues were only [his] anxiety without any test to prove otherwise." [Id.].

Staff, including Viera, "joked that [Benner] was a hypochondriac." [ECF No. 9 at 4]. Benner alleges that Viera conspired with medical and non-medical staff with the result that Benner began "to be taken off all of the triage and provider appointments [that he] was on the

schedule for." [ECF No. 9 at 5]. Benner asserts that Viera "blocked [him] from getting any outside treatment from Shattuck Hospital[,] etc." [Id.].

With respect to Defendant Dolan, the SAC alleges that she "made hostile comments to [Benner] stating that there was nothing wrong with [Benner and advising him] over and over [that he] wouldn't be put on the list to see the provider because the provider had seen [Benner] for [a] completely separate issue at an earlier date and time." [ECF No. 9 at 5]. Dolan purportedly "intentionally blocked [Benner] from treatment [thus] prolonging [his] pain" and acted "deliberately due to [Benner's] many sick call slips and grievances." [Id.]. Benner represents that he asked Dolan to get him "further testing such as MRI's, CT Scans, X-Rays, various medicines, eye antibiotics, rash cream, [and] antibiotics." [ECF No. 9 at 6].

With regards to Defendant Stachowicz, Benner alleges that he advised her at triage of his "severe rectal pain and bleeding, food poisoning, worms in [his] stool." [ECF No. 9 at 6]. Stachowicz responded "no" when Benner "requested testing and to see the provider." [Id.]. Stachowicz advised Benner that she would "not put[] [Benner] on the list" and that he had "been seen many times[, that] you are fine[, and that] your labs were ok." [Id.]. She refused Benner's request that his "new and ongoing symptoms" be entered "into the computer IMS data base." [Id.].

As to Defendant Ddungo, Benner showed him "several prolapsed hemorrhoids that were severe and extremely painful." [ECF No. 9 at 7]. Ddungo allegedly performed a "partial rectal exam which caused more pain & tearing inside [because he] did not use lubricant on his gloves." [Id.]. Ddungo subsequently saw Benner concerning a rash, at which time Benner showed Ddungo "several prolapses." [Id.]. Ddungo "refused to do a stool test for bacterial infection or parasites [and Ddungo] refused to send [Benner] to Shattuck [despite the fact that] the prolapses

were very visible." [ECF No. 9 at 7–8].  Ddungo subsequently described the prolapses as "only mild swelling." [ECF No. 9 at 8].  At a subsequent rectal exam, Benner told him to only look, rather than physically examine him, "because [he] was in severe pain and it was torn and infected and there was a rash." [Id.].  Ddungo was then purposely "forceful [and did] not us[e] lubricant" because Benner "refused to allow [Ddungo] to do that type of exam with a female present." [Id.].  Ddungo ordered a stool sample, but it was never taken.  [Id.].  Although Ddungo prescribed a 2% antifungal cream, five days later Benner received only 1% cream.  [Id.].  Ddungo made several remarks that Benner was confrontational when Benner was "just in severe pain." [Id.].  In an effort to embarrass and harass Benner, Ddungo informed Benner in front of male and female non-medical officers that he is "not ordering any stool samples or further treatment" and that Benner is "all set." [Id.].

With respect to Defendant Hameed, she refused to perform physical exams and told Benner that he is "fine" and that "triage and other providers and the computer [indicate that all of Benner's tests] were within normal limits." [ECF No. 9 at 9].  Benner advised her that those were results for other issues and that he is suffering from "food poisoning, worms in [his] stool, abdominal pain, prolapsed hemorrhoids, conjunctivitis, faciitis (sic) in left foot, osteo-arthritis in both knees & [his] back, costochondritis in [his] chest, chest pains, numbness in [his] face." [Id.].  Benner also told Dr. Hameed that he had "large sharp objects (not feces) in [his] stool cutting [him] open inside." [ECF No. 9 at 10].  During one visit, Benner "was handcuffed behind [his] back & shackled (feet) with 2 officers present and [Benner] repeatedly said [that he] needed treatment outside the jail." [Id.].  In response, Dr. Hameed said that Benner is "fine." [Id.].  When Benner explained that he had pain in his abdomen, she "literally punched [Benner]

in the stomach several times." [Id.].  Further, Dr. Hameed denied Benner's request for stool samples, creams, and additional treatment, and had Benner removed from the office area.  [Id.].

## III.     DISCUSSION

### A.     Motion to Amend

Benner's motion to amend requests that Wellpath and the Department of Corrections be added as defendants, but it does not include any additional factual allegations as to those entities or a copy of the proposed amended complaint.  [ECF No. 37].  Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint shall be "freely give[n] . . . when justice so requires."  Here, however, less than one month ago, Benner advised the Court that he filed an entirely new action that includes Wellpath and the Department of Correction as defendants. [ECF No. 41].  In light of this information, and because the motion to amend fails to include any factual allegations against the proposed defendants, Benner's motion to amend is DENIED without prejudice to refiling a motion to amend accompanied by a proposed third amended complaint.

### B.     Motions to Dismiss

Liberally construed, Benner asserts the following claims: (1) Eighth Amendment violations pursuant to 42 U.S.C. § 1983, (2) conspiracy to violate his civil rights under 42 U.S.C. § 1983, (3) violation of the Health Insurance Portability and Accountability Act ("HIPAA"), (4) defamation, and (5) medical malpractice.  [ECF No. 9].  He also seeks injunctive relief.  [Id.]. All defendants have moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

1.      Legal Standard

Under the Federal Rules of Civil Procedure, a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (quoting García–Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted).  "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García–Catalán, 734 F.3d at 103 (internal quotations and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

In this case, the Court construes the complaint liberally because it was filed *pro se*.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  "However, pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890

(1st Cir. 1997).  Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim.  Muller v. Bedford VA Admin. Hosp., 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

       2.     Defendant DeMoura

As to DeMoura, liberally construed, the SAC appears to only assert § 1983 claims against him for violation of Benner's Eighth Amendment rights and conspiracy, but the SAC does not contain factual allegations to support the plausible inference that DeMoura can be held liable for any unlawful conduct.  The few allegations concerning DeMoura in the SAC are largely conclusory and insufficient to state a claim that he directly participated in any of the alleged conduct, let alone any civil rights violations.  E.g., [ECF No. 9 at 2 (stating that Benner sent grievances to DeMoura and asserting, without factual support, that DeMoura "deliberately denied and blocked [Benner] from receiving medical care")].  To the extent Benner seeks to hold DeMoura liable for any allegedly unconstitutional conduct simply because he is the Superintendent, and therefore a supervisor, this is also not sufficient to state a claim.  In § 1983 actions, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . . supervisory officials may be liable on the basis of their own acts or omissions."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citations and internal quotation marks omitted).  "[S]upervisory liability typically arises in one of two ways: either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."  Id. (internal quotation marks omitted).  Under either path for supervisory liability, "the plaintiff in a Section 1983 action must

show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id. Here, there are no non-conclusory factual allegations that DeMoura directly participated in any conduct or acted in a deliberately indifferent way that contributed to any civil rights violation.

Thus, DeMoura's motion to dismiss the entire SAC is GRANTED.

       3.    The Medical Defendants

          a.    42 U.S.C. § 1983 - Eighth Amendment Violations

Benner argues that the Medical Defendants violated his Eighth Amendment right to medical care by failing to provide him with adequate treatment. The Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994) set forth a two-part test for Eighth Amendment violations. "First, the deprivation alleged must be, objectively, sufficiently serious." Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 834). Second, there must be a showing "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Id. (citing Farmer, 511 U.S. at 834). Where an issue of deliberate indifference is presented, liability will not lie "unless the official knows of and disregards an excessive risk to inmate health and safety." Farmer, 511 U.S. at 837. "A finding of deliberate indifference requires more than a showing of negligence." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991); see also Burrell, 307 F.3d at 8 (deliberate indifference standard requires a state of mind "more blameworthy than negligence"). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Thus, substandard treatment, "even to the point of malpractice, is not the issue" under the deliberate indifference standard. Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006). "[A] plaintiff's

'allegations [that] simply reflect a disagreement on the appropriate course of treatment . . . fall[] short of alleging a constitutional violation.'" Id. (quoting Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980)). But "deliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" Id. at 163 (quoting Torraco, 923 F.2d at 234).

The Medical Defendants, in their supporting memorandum, characterize Benner's complaint as no more than a disagreement between an inmate patient and his treating clinicians as to what treatments were medically necessary. [ECF No. 31]. However, taking all the facts in the SAC as true, Benner alleges more than just a difference of opinion as to proper treatment, and instead claims that the Medical Defendants refused to provide appropriate or adequate treatment for symptoms that would, and are alleged to have, become aggravated if untreated. Accordingly, the allegations, albeit just barely, allow for the plausible inference that "the attention [Benner] received [was] 'so clearly inadequate as to amount to a refusal to provide essential care,'" Feeney, 464 F.3d at 163 (quoting Torraco, 923 F.2d at 234 (internal citation omitted)), and that the Medical Defendants were deliberately indifferent, see Perry v. Roy, 782 F.3d 73, 79 (1st Cir. 2015) ("The subjective prong relies entirely on whether [defendant] had a purposeful intent while neglecting [plaintiff's] treatment.").

The Medical Defendants also argue that they are entitled to qualified immunity for any Eighth Amendment violations. [ECF No. 31 at 17–18]. Qualified immunity protects "government officials performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a defendant is entitled to qualified immunity, a court must determine: "(1)

11

whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

As noted above, the Court finds Benner has alleged enough facts to state an Eighth Amendment claim at this early stage, and, based on the record before it, the Court cannot find that his claim is so novel that his rights were not "clearly established" or that a reasonable person would not have been aware of said rights. Accordingly, the issue of whether the Medical Defendants are entitled to qualified immunity cannot be resolved at this time.

Therefore, the Court finds that Benner's SAC pleads sufficient facts to support his § 1983 Eighth Amendment claims against the Medical Defendants and their motion to dismiss is DENIED as to those claims.

b.    42 U.S.C. § 1983 Conspiracy Claims

Benner fails to plead facts sufficient to make out a plausible claim for conspiracy against any defendant. As the First Circuit explained

> [a] civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quotation marks and citation omitted). "A conspiracy may be a 'matter of inference[,]'" Diaz v. Devlin, 229 F.Supp.3d 101, 111 (D. Mass. 2017) (quoting Estate of Bennett, 548 F.3d at 178)), however, "[c]onclusory allegations of conspiracy" without reference to specific facts "cannot survive a motion to dismiss[,]" Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). Here, the SAC

12

does not plead the essential allegation of an agreement among the Medical Defendants to deprive Benner of his constitutional rights.  See Bemis v. Kelley, 671 F. Supp. 837, 843 (D. Mass. 1987). Because Benner has not sufficiently alleged that a conspiracy existed which deprived him of a constitutional right, the Medical Defendants' motion to dismiss that claim is GRANTED.

   c.   HIPAA

To the extent Benner seeks to assert a cause of action for violation of his rights under HIPAA, that statute does not create a private right of action and, therefore, cannot be privately enforced.  Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009); Spencer v Roche, 755 F. Supp. 2d 250, 271 (D. Mass. 2010).  Accordingly, to the extent there is a HIPAA claim alleged, it is DISMISSED for failure to state a claim upon which relief can be granted.

   d.   Defamation

Benner asserts state law claims of defamation against the Medical Defendants.  To state a claim for defamation under Massachusetts law, a plaintiff must allege: "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'"  Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (alterations in original) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510–11 (Mass. 2003)).

"A false statement that 'would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,' [is] considered defamatory."  Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 553 (Mass. 2004) (quoting Stone v. Essex Cty. Newspapers, Inc., 330 N.E.2d 161, 165 (Mass. 1975)).  "Four types

13

of statements are actionable without proof of economic loss: statements that constitute libel, see Shafir v. Steele, 727 N.E.2d 1140 (Mass. 2000); statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business, see Lynch v. Lyons, 20 N.E.2d 953 (Mass. 1939)." Ravnikar, 782 N.E.2d at 511.

For defamatory statements, the SAC alleges that (1) Defendant Ddungo said several times that Benner was confrontational and also discussed Benner's medical treatment in front of non-medical staff in an effort to harass and embarrass him; and (2) Defendant Viera told staff that Benner's issues were anxiety and joked that he was a hypochondriac. [ECF No. 9 at 4, 8]. In their supporting memorandum, the Medical Defendants contend that the alleged statements by Ddungo and Viera do not amount to defamation because they constituted medical opinions. [ECF No. 31 at 16–17]. The Medical Defendants also argue that Benner fails to allege economic harm and that there are no factual allegations that Defendants Dolan, Stachowicz, or Hameed made statements about Benner to third parties. [Id.].

The Medical Defendants are correct that Benner does not plead any facts regarding economic harm from the allegedly defamatory statements, and he has therefore failed to allege this element of defamation. Benner appears to argue that economic harm is not necessary because the allegedly defamatory statements are actionable *per se*. See [ECF No. 36 at 11 (Benner's opposition brief failing to identify economic loss and arguing that the statements "are actionable even without economic loss")]. As the Court understands it, his position is that the allegedly defamatory statements assert that he has a loathsome and communicable disease, but he has not actually alleged that the defamatory statements discussed any such loathsome or communicable diseases, so that *per se* theory is inapplicable here. [ECF No. 9 at 4, 8 (statements

14

involved "stool samples," "further treatment," Benner's "anxiety," and that he is a "hypochondriac" and "confrontational," but not mentioning any diseases)]; see also Restatement (Second) of Torts, § 570(b), 572 cmt. c (explaining that this type of *per se* statement is limited to diseases that are held in some special repugnance, i.e. diseases which are sexually transmitted or highly contagious).  He also seems to assert that there were "written statements," implying these statements would be libel and actionable *per se*, [ECF No. 36 at 10–11], but the SAC only alleges spoken statements.  [ECF No. 9 at 4 (alleging that Defendant Viera "told" Benner and other staff that his "issues were only [his] anxiety" and he was a "hypochondriac"); 8 (alleging that Defendant Ddungo said Benner was confrontational and that he would not order any stool samples or further treatment)].  Finally, because there are no factual allegations of defamation in the SAC against Dolan, Stachowicz, or Hameed, Benner has not plausibly alleged a claim against those defendants.  As a result, the defamation claim is not sufficiently pled and the Medical Defendants' motion to dismiss the defamation claim is GRANTED.

     e.    Medical Malpractice

Although not clear from the face of the SAC, the Medical Defendants have interpreted it to allege a medical malpractice claim under Massachusetts law.  [ECF No. 9 at 3, 5, 9, 10 (alluding to "malpractice"); ECF No. 31 at 14 (motion to dismiss)].  Benner's opposition appears to argue that he has stated a medical malpractice claim.  [ECF No. 36 at 10].  A plaintiff in a medical malpractice suit must show: (1) a physician-patient relationship existed between the physician and the plaintiff, (2) the physician breached his or her duty of care, and (3) the breach was the proximate cause of the injury.  Mitchell v. United States, 141 F.3d 8, 13 (1st Cir. 1998) (citing Blood v. Lea, 530 N.E.2d 344, 347 (Mass. 1988)).  Additionally, under Massachusetts law, a state law claim for medical malpractice (whether asserted in state or federal court) must be

submitted to a state court medical tribunal (consisting of a state court judge, a medical provider, and an attorney).  See M.G.L. ch. 231, § 60B.  The tribunal holds a hearing at which the plaintiff must present evidence that, if properly substantiated "is sufficient to raise a legitimate question of liability appropriate for judicial inquiry."  Id.  If the tribunal finds for the defendants, the plaintiff may pursue the usual judicial process (whether in state or federal court) only if he files a $6000 bond within 30 days of the tribunal's finding.  Id.  Upon motion of the plaintiff, a court may reduce, but not eliminate, the bond requirement.  Id.  While the tribunal proceeds, all other remaining claims would be stayed.  No party has addressed this procedural requirement or asked the Court to refer the medical malpractice claim to a tribunal.  Given the lack of clarity in the SAC and the potential impact such a referral would have on the timely disposition of this case, the Court reserves ruling on any medical malpractice claim.  Within 21 days of the date of this Order, Benner shall file a status report with the Court clarifying whether he is indeed pursuing a medical malpractice claim under Massachusetts law and, within 14 days of the status report's filing, Medical Defendants shall respond to the status report.

> f.    Injunctive Relief

The Medical Defendants argue that Benner's claims for injunctive relief are moot because Benner was transferred from MCI-Cedar Junction and is now in custody at MCI-Norfolk.  [ECF No. 31 at 17].  An inmate generally loses the right to challenge "prison conditions or policies" at a particular facility when he transfers or leaves that prison because his complaints would no longer have any substantial impact on his life.  Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (citing Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007)).  However, "[i]f an inmate can show the challenged policies are 'capable of repetition, yet evading review,'

then he can escape mootness." Snell v. Neville, 998 F.3d 474, 485 (1st Cir. 2021) (quoting Ford, 768 F.3d at 30).

Here, even if a factfinder were to ultimately conclude that the complained-of circumstances at MCI-Cedar Junction were unconstitutional, any injunction to rectify such treatment would not provide relief to Benner because he is now confined to MCI-Norfolk. The possibility of future harm at MCI-Cedar Junction is too remote to overcome the mootness doctrine. Thus, the Medical Defendants' motion to dismiss the claims for injunctive relief is GRANTED.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above:

- Benner's motion to amend, [ECF No. 37], is DENIED without prejudice. If Benner wishes to amend, he may file, on or before April 29, 2022, a motion to amend accompanied by a proposed third amended complaint.

- Defendant DeMoura's motion to dismiss, [ECF No. 39], is GRANTED. All claims against Defendant DeMoura are DISMISSED.

- The Medical Defendants' motion to dismiss, [ECF No. 30], is GRANTED in part and DENIED in part as follows:

    o Benner's Eighth Amendment claims for damages as to all the Medical Defendants may go forward;

    o Benner's claims for injunctive relief, conspiracy, defamation, and HIPAA violations are DISMISSED as to all Medical Defendants.

- The Court reserves ruling on any state law medical malpractice claim. Benner shall file a status report within 21 days of this Order indicating whether he is indeed pursuing such a claim. The Medical Defendants may respond to any status report within 14 days of its filing.

 **SO ORDERED.**

March 30, 2022                                          /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE